UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARLOS E. JEAN-GILLES, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. 4:14-cv-827 (JCH) |
| ) | |
| FABIOLA JEAN GILLES, ESQ. ) | |
| a/k/a FABIOLA MALDONADO, ESQ., ) | |
| et. al., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Fabiola Jean-Gilles' ("Ms. Jean-Gilles") Motion to Dismiss Plaintiff's "Revised" Third Amended Complaint,[1] (ECF No. 67); Defendant 177 Thompson Owners Corp.'s ("Thompson") Motion to Dismiss, (ECF No. 60); Defendant JP Morgan Chase Bank, N.A.'s ("Chase") Motion to Dismiss Plaintiff's Third Amended Complaint, (ECF No. 73); and Defendant Nationwide Title Clearing's ("Nationwide") Motion to Dismiss Plaintiff's Third Amended Complaint, (ECF No. 75). The motions have been fully briefed and are ready for disposition.

Plaintiff Carlos Jean-Gilles ("Mr. Jean-Gilles") initiated this action by filing a complaint with this Court on April 30, 2014. (ECF No. 1). Mr. Jean-Gilles' original complaint has undergone several amendments, and the one currently in effect is the Third Amended Complaint (the "Complaint"), filed September 17, 2014. (Complaint, ECF No. 56). The Complaint allegedly is based on "distinct tortious acts perpetrated by Fabiola Jean-Gilles, Esq. . . . , an Arizona

---
[1] The controlling Complaint is entitled "Third Amended Complaint." (ECF No. 56). The Court will treat Ms. Jean-Gilles' Motion as one to dismiss the Third Amended Complaint rather than the "Revised" Third Amended Complaint.

1

citizen, and JP Morgan Chase . . . , a national bank with its principal place of business located in New York, N.Y. The other two parties [ Thompson and Nationwide] simply colluded with the first two." (Complaint ¶ 1). These alleged tortious actions all involve a "cooperative apartment [the "Property"] that is jointly owned by [Ms. Jean-Gilles and Mr. Jean-Gilles] with right of survivorship . . . ." *Id.* ¶ 7. "The apartment . . . is located in New York City." *Id.*

Mr. Jean-Gilles alleges that Ms. Jean-Gilles, through Chase, paid "the original small mortgage that was on the Property" and encumbered the Property with a new mortgage. *Id.* ¶ 60. Mr. Jean-Gilles claims that this refinancing was illegal because it occurred without his authorization despite his joint ownership of the Property. *Id.* In addition to the illegal refinancing of the Property, Ms. Jean-Gilles allegedly has withheld from Mr. Jean-Gilles his share of rental income. *Id.* ¶ 35. Mr. Jean-Gilles also asserts that he had fiduciary relationships both with Ms. Jean-Gilles, as his sister and co-owner, and with Chase, as successor to the original mortgage lender. *Id.* ¶¶ 72, 81, 82.

Ms. Jean-Gilles is said to conduct "her law firm business at 1900 W University Dr #222, Tempe, AZ 85281 and also lives in the State of Arizona." *Id.* ¶ 11. In relation to the location of the wrongful actions, Mr. Jean-Gilles alleges that while it is possible "some of the steps taken by [Ms. Jean-Gilles] to implement the unlawful refinancing scheme alleged herein could have been committed by her while she was in New York, [Mr. Jean-Gilles'] best guess is that [Ms. Jean-Gilles] was physically in Arizona when she committed the alleged fraudulent acts." *Id.* ¶ 2. As to Chase, it allegedly maintains its principal place of business in New York, *id.* ¶ 1, but the location of its actions is unclear from the Complaint.

Against the remaining defendants, Thompson and Nationwide, Mr. Jean-Gilles has alleged various acts in furtherance of a civil conspiracy. Specifically, Mr. Jean-Gilles asserts that

Thompson "provided substantial aid by agreeing to change the names on the stock certificate to [Ms. Jean-Gilles] alone without proper authority to do so, which then allowed [Ms. Jean-Gilles] to proceed with her unlawful scheme . . . ." *Id.* ¶ 96. The complaint further alleges that "Nationwide's ratification of clear title [in favor of Ms. Jean-Gilles] as evidenced by the New York Department of Finance's Records is and was an essential part of the conspiracy." *Id.* ¶ 97.

Mr. Jean Gilles claims that Thompson "is a New York corporation that does not do business in Missouri." *Id.* ¶ 9. There are no allegations directly related to Nationwide's citizenship, but Mr. Jean-Gilles alleges that it "was previously served by a process server at 2100 Alt 19 North, Palm Harbor, FL 34683." *Id.* ¶ 13.

The Complaint contains three counts based on these factual allegations: (1) unjust enrichment against Ms. Jean-Gilles; (2) breach of fiduciary duty against Ms. Jean-Gilles and Chase; and (3) civil conspiracy against Ms. Jean-Gilles, Chase, Nationwide, and Thompson.[2] Each Defendant has filed a separate motion to dismiss. These motions can be grouped into two categories: (1) Ms. Jean-Gilles and Thompson both move to dismiss for lack of personal jurisdiction; and (2) Chase and Nationwide move to dismiss based on Mr. Jean-Gilles' failure to state a facially plausible claim. The Court will deal first with the personal jurisdiction challenges and then with the challenges to the Complaint's sufficiency. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 778 (2000).

### PERSONAL JURISDICTION DEFENDANTS

In the context of a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v.*

---

[2] Mr. Jean-Gilles also repeats throughout his Complaint that Defendants are liable for depriving him of his due process rights. (*E.g.*, Complaint ¶ 3). The Due Process clauses do not, however, protect against the actions of private individuals. *E.g.*, *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 194-96 (1989).

*Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). "To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant." *Id.* To make a prima facie showing,764F3d plaintiff must plead "sufficient facts to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (alteration in original) (internal quotation marks omitted). "Although the evidentiary showing required at the prima facie stage is minimal, . . . the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion . . . ." *Id.* at 592 (internal citation and quotation marks omitted).

A federal court has personal jurisdiction over a properly served defendant if a state court in the forum state would have jurisdiction over that defendant. Fed. R. Civ. P. 4(k). Personal jurisdiction can be either general, meaning a court in the forum state may hear any matter in which the party is involved, or specific, meaning the court's power over the party is limited to the specific matter before it.

The focus here is specific jurisdiction. Courts perform a two-part inquiry to decide whether they may exercise specific jurisdiction over a non-resident defendant. First, they must determine whether the defendant committed one of the acts enumerated in the forum state's long-arm statute. *Angelica Corp. v. Gallery Mfg. Corp.*, 904 F.Supp. 993, 996 (E.D. Mo. 1995). If so, they must determine whether the exercise of jurisdiction comports with the requirements of due process. *Id*.

Missouri's long-arm statute permits the exercise of personal jurisdiction over an out-of-state defendant when a cause of action arises from the defendant's performance of at least one of the acts enumerated in the statute. Mo. Rev. Stat. § 506.500.3. If the defendant has performed an

enumerated act, Missouri courts may exercise jurisdiction to the full extent permitted by due process principles. *Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 232 (Mo. 2010) (*en banc*) (internal quotation marks omitted). The type of action relevant here is found in subsection 506.500.1(3): "The commission of a tortious act within this state." *Id.* The reach of this subsection has been construed to include "[e]xtraterritorial acts that produce consequences in the state, such as fraud . . . ." *Bryant*, 310 S.W.3d at 232 (internal quotation marks omitted).

Due process requires that a defendant's contacts with the forum be significant enough so as not to "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This means in part that "a defendant must have taken actions creating a substantial connection with the forum, and purposefully avail itself of the benefits and protections of the forum to anticipate reasonably being hailed [sic] into court there." *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 912 (8th Cir. 2014) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Eighth Circuit analyzes five factors to determine whether the minimum contacts standard has been satisfied: "'(1) the nature and quality of the [defendant's] contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.'" *Land-O-Nod Co. v. Bassett Furniture Industries, Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983) (quoting *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977).

*A. Ms. Jean-Gilles*

Ms. Jean-Gilles contends the Court does not have jurisdiction over her because she "just does not have the requisite minimum contacts with the state of Missouri. [She] does not reside in Missouri. [She] does not conduct business in Missouri. [She] has never even been to Missouri."

(Ms. J-G Support Memo, ECF No. 62, at 5). Ms. Jean Gilles also asserts that Mr. Jean-Gilles "has not shown that this Court has personal jurisdiction over [her] by simply asserting that [her] alleged conduct had consequences in Missouri because [Mr. Jean-Gilles] lives there." *Id.* at 4.

Mr. Jean-Gilles presents two arguments that he believes establish the Court's jurisdiction over Ms. Jean-Gilles.[3] First, Mr. Jean-Gilles contends his assertion "that defendant committed a tortious act outside of Missouri that had consequences in Missouri" is sufficient to establish personal jurisdiction under Missouri's long-arm statute. (Mr. J-G Response to Ms. J-G, ECF No. 80, ¶ 2). Second, he contends that Ms. Jean-Gilles has sufficient contacts with Missouri to establish specific jurisdiction. These contacts include Ms. Jean Gilles' attendance at Mr. Jean-Gilles' wedding; requests from Ms. Jean-Gilles' attorney for Mr. Jean-Gilles to provide a power of attorney so Ms. Jean-Gilles could sell the Property; and e-mails regarding Ms. Jean-Gilles' cancer diagnosis. (Mr. J-G Response to Ms. J-G ¶¶ 6, 9, 11, 12).[4]

Mr. Jean-Gilles seems to be correct that the extraterritorial tort or torts allegedly committed by Ms. Jean-Gilles come within the reach of Missouri's long-arm statute, since Mr. Jean-Gilles allegedly suffered injuries in Missouri. *See Bryant*, 310 S.W.3d at 232. But the exercise of jurisdiction must also satisfy due process. In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court found that a California court properly exercised jurisdiction over out-of-state defendants, even though they performed the relevant actions outside of California, because the defendants' "intentional, allegedly tortious, actions were expressly aimed at California." *Id.* at

---

[3] In relation to both personal jurisdiction motions, the Court assumes without deciding that Mr. Jean-Gilles has satisfied his evidentiary burden and examines only the quality of the contacts alleged.

[4] Mr. Jean-Gilles also asserts that Ms. Jean-Gilles has waived her personal jurisdiction defense by (1) entering an appearance at a scheduling conference and (2) failing to specify in her answer to Mr. Jean-Gilles' original complaint the exact basis of her personal jurisdiction defense. (Mr. J-G Response to Ms. J-G ¶¶ 4, 5). Neither argument has merit. *See* Fed. R. Civ. P. 12(b) (allowing personal jurisdiction defense to be asserted in responsive pleading or motion); *Alger v. Hayes*, 452 F.2d 841, 843 (8th Cir. 1972) (requiring only a specific reference to personal jurisdiction to preserve defense).

788-89. This case has given rise to a limited "effects" test, under which extraterritorial intentional tortious actions expressly aimed at the forum state and having effects in the forum state can serve as a basis for personal jurisdiction in the forum state. *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390-91 (8th Cir. 1991).

The Eighth Circuit clarified *Calder* in *Dakota.* There, the Eighth Circuit found that *Calder* did not require it to "abandon the five-part test of *Land O'Nod*" and replace it with a bright-line rule. *Id.* at 1391. Instead, *Calder* simply mandates "the consideration of additional factors when an intentional tort is alleged[,]" such as whether the tort was deliberately aimed at the forum state. *Id.*; *see Calder*, 465 U.S. at 788-89. A plaintiff therefore may not establish the jurisdiction over a defendant based solely on the allegation that the defendant committed intentional torts that had effects in the forum state. To determine whether it has jurisdiction, a district court must examine all of the contacts between the defendant, the forum, and the litigation under the combined factors of *Land O'Nod* and *Calder*.

According to the Complaint, Ms. Jean-Gilles engaged in an illegal refinancing scheme that caused damages to Mr. Jean-Gilles in the form of lost rental income and constituted a breach of Ms. Jean-Gilles' fiduciary duties. The effects of these actions were felt in Missouri because Mr. Jean-Gilles lives in Missouri, which Mr. Jean-Gilles implies Ms. Jean-Gilles had reason to know. (*See* Complaint ¶¶ 39, 55). But the alleged scheme involved the refinancing of a New York property through a New York bank by a resident of Arizona. Moreover, all the actions directly related to the refinancing were, according to Mr. Jean-Gilles' Complaint, performed in either New York or Arizona. (Complaint ¶ 2 ("some of the steps taken by [Ms. Jean-Gilles] to implement the unlawful refinancing scheme alleged herein could have been committed by her while she was in New York, [but Mr. Jean-Gilles'] best guess is that [Ms. Jean-Gilles] was

7

physically in Arizona when she committed the alleged fraudulent acts")). Even a significant portion of the injury allegedly suffered by Mr. Jean-Gilles, interference with his rights in a New York property, occurred outside of Missouri.

The other contacts alleged present a similar disconnect between this litigation and the state of Missouri. Ms. Jean-Gilles' attendance at Mr. Jean-Gilles' wedding is in no discernible way related to the refinancing scheme; the e-mails between Mr. and Mrs. Jean-Gilles regarding Ms. Jean-Gilles' cancer are also unrelated; and the request for a power of attorney, at most, bears an indirect relationship to the performance of the refinancing in that it gave Ms. Jean-Gilles a reason to pursue the scheme.

In short, Mr. Jean-Gilles' allegations do not add up to a prima facie showing of personal jurisdiction. Ms. Jean-Gilles has no relationship to the state of Missouri that could be relevant to this action. It is, therefore, inconsistent with the requirements of due process for the Court to exercise its power over Ms. Jean-Gilles, and the claims against her must be dismissed.

*B. Thompson*

Thompson contests the existence of specific jurisdiction over it by charging that Mr. Jean-Gilles has brought suit against "a non-Missouri entity . . . that has no contacts with the State of Missouri, based on claims relating to business transactions in New York to which [it] is not a party and in which it has no legal interest." (Thompson Support Memo, ECF No. 62, at 1). Mr. Jean-Gilles' response contains four arguments: (1) that the Court has jurisdiction over Thompson under 28 U.S.C. § 1391(b)(3); (2) that the Court demonstrated its jurisdiction over Thompson when it denied as moot Thompson's motion to dismiss the Second Amended Complaint after granting Mr. Jean-Gilles leave to file his Third Amended Complaint; (3) that because the Court has jurisdiction over Ms. Jean-Gilles it has jurisdiction over all of her co-conspirators; and (4)

8

that because Mr. Jean-Gilles has set forth a federal cause of action, the relevant contacts are measured on a nationwide basis for due process purposes.

None of Mr. Jean-Gilles' arguments has merit. The first fails because 28 U.S.C. § 1391(b)(3) has nothing to do with jurisdiction. The second fails because courts do not deprive defendants of the right to mount a defense merely by allowing plaintiffs to amend their pleadings. The third fails both because the Court does not have jurisdiction over Ms. Jean-Gilles and because courts must have an independent basis for jurisdiction over each defendant individually. The fourth fails because even in a federal action, which this is not, the specific jurisdiction inquiry focuses on the contacts between defendant, litigation, and forum state.

Aside from these arguments, the Court cannot exercise personal jurisdiction over Thompson because Mr. Jean-Gilles has not alleged a single relevant contact. Thompson is a New York corporation with no general ties to Missouri, and no allegation connects Thompson to Missouri in the context of this suit. Mr. Jean-Gilles effectively admits as much in his Complaint. (*See* Complaint ¶ 9 (noting that Thompson is "a New York corporation that does not do business in Missouri)). Mr. Jean-Gilles therefore has not made a prima facie showing of personal jurisdiction over Thompson, and the civil conspiracy claim against Thompson must be dismissed.

### **FAILURE TO STATE CLAIM DEFENDANTS**

The two remaining defendants, Chase and Nationwide, do not contest the Court's personal jurisdiction over them in their motions to dismiss. They instead challenge the facial sufficiency of Mr. Jean-Gilles' Complaint. The Court will therefore decide their motions under Fed. R. Civ. P. 12(b)(6).

Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim" that gives "the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (first alteration in original) (internal citation and quotation marks omitted). When ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts must view the allegations in the complaint in the light most favorable to Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Courts must also "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). A Rule 12(b)(6) motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face*." Twombly*, 550 U.S. at 570 (2007). Stated differently, to survive a Rule 12(b)(6) motion, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555 (citations omitted).

### A. Chase

Mr. Jean-Gilles has brought two claims against Chase: one for breach of fiduciary duty and another for participation in a civil conspiracy.

#### 1. Breach of Fiduciary Duty

Chase contends the breach of fiduciary duty claim is facially insufficient because the allegations cannot support the existence of a fiduciary relationship between Chase and Mr. Jean-Gilles. (Chase Motion, ECF No. 73, ¶ 2). Mr. Jean-Gilles' Response does not address this contention, but the Complaint alleges that Mr. Jean-Gilles had a fiduciary relationship with Washington Mutual Bank, Chase's predecessor in interest on the Property's mortgage, and that Chase inherited that relationship when it acquired Washington Mutual. (Complaint ¶¶ 81, 82).

Under both New York and Missouri law, one predicate for a breach of fiduciary duty claim is the existence of a fiduciary relationship. *Robert T. McLean Irrevocable Trust v. Patrick Davis, P.C.*, 110 A.D.3d 1059 (Mo. Ct. App. 2009); *Varveris v. Zacharackos*, 973 N.Y.S.2d 774, 775 (N.Y. App. Div. 2013). The general rule in New York is that "[t]he legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower . . . ." *Bank Leumi Trust Co. of New York v. Block 3102 Corp.*, 580 N.Y.S.2d 299 (N.Y. App. Div. 1992). The exception to this rule is "where there exists a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding, or an assumption of control and responsibility." *Roswell Capital Partners LLC v. Alt. Const. Tech.*, 638 F. Supp. 2d 360, 369 (S.D.N.Y. 2009) (internal quotation marks omitted).

Missouri law is similar. The general rule in Missouri is that "the relationship between a lender and a borrower is one of contractual obligation, not one of duty." *Kulovic v. BAC Home Loans Servicing, L.P.*, 2011 WL 1483374, at *11 (E.D. Mo. April 19, 2011) (citing *Wood & Huston Bank v. Malan*, 815 S.W.2d 454, 458 (Mo. Ct. App. 1991). A fiduciary relationship arises between a borrower and lender where the borrower can show that it has become subservient to the dominant will of the lender. *Yoeset v. Farm Credit Bank of St. Louis*, 832 S.W.2d 325, 328 (Mo. Ct. App. 1992).

The Complaint asserts that Mr. Jean-Gilles' "breach of fiduciary claim against Defendant Chase arises out of two mortgages" and that "Chase engaged in a transaction [ the refinancing] that was prohibited by law and where a conflict of interest existed." (Complaint ¶¶ 78, 79). Mr. Jean-Gilles alleges further that he received a letter of unspecified content from a Customer Care Specialist of Washington Mutual, Chase's predecessor in interest; that he had a 20-year

relationship with Chase and its predecessors; and that he received several monthly statements from Washington Mutual on which he "was totally dependent." *Id.* ¶¶ 80, 81, 82, 83.

Mr. Jean-Gilles' allegations, taken as true, establish nothing more than an ordinary lender-borrower relationship. If receipt of monthly statements from a bank and contact with its customer service department give rise to a fiduciary relationship, then, contrary to the law in Missouri and New York, nearly every borrower would have a fiduciary relationship with its lender. The exception would swallow the rule. And even if the actions taken by Chase were unlawful, the unlawfulness of the actions says nothing about the status of the already-existing relationship between Chase and Mr. Jean-Gilles. Mr. Jean-Gilles has therefore not plausibly alleged the existence of a fiduciary relationship with Chase, a relationship which is necessary for the maintenance of a breach of fiduciary duty claim under New York and Missouri law. Thus, the breach of fiduciary duty claim against Chase must be dismissed.

### 2. Civil Conspiracy

Chase contends the civil conspiracy claim must also be dismissed: (1) because Mr. Jean-Gilles has not sufficiently pleaded the underlying tort, breach of fiduciary duty; and (2) because the allegations in the Complaint insufficiently plead the other elements of a civil conspiracy claim under New York and Missouri law. (Chase Motion ¶ 3; Chase Support Memo, ECF No. 74, at 10-11). Mr. Jean-Gilles does not address Chase's first contention. As to Chase's second contention, Mr. Jean-Gilles asserts that it does not matter whether he has pleaded a sufficient Missouri or New York civil conspiracy claim because he has brought a plausible federal conspiracy claim. (Mr. J-G Response to Chase, ECF No. 78, ¶ 3).

New York recognizes no "independent cause of action for conspiracy to commit a civil tort." *Abacus Fed. Savs. Bank v. Lim*, 75 905 N.Y.S.2d 585 (N.Y. App. Div. 2010). A conspiracy

claim may be used "only to connect the actions of separate defendants with an otherwise actionable tort . . . ." *Id.* (internal quotation marks and citation omitted). Because of this, a plaintiff in New York must prove "the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury . . . ." *Id.* (internal quotation marks and citation omitted).

To establish a civil conspiracy under Missouri law, a plaintiff must show that "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged." *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. 1999) (*en banc*). As in New York, conspiracy is not an independent claim but must instead be based on "an underlying wrongful act or tort." *Willams v. Mercantile Bank of St. Louis NA*, 845 S.W.2d 78, 85 (Mo. Ct. App. 1993). This has been interpreted to mean that "a conspiracy does not give rise to a civil action unless something is done pursuant to which, absent the conspiracy, would create a right of action against one of the conspirators." *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008); *see also Greene v. Schneider*, 372 S.W.3d 887, 890-91 (Mo. Ct. App. 2012) (finding violation of criminal statute was not "wrongful act" because it did not give rise to separate civil liability). The law of both states thus requires proof of an underlying action giving rise to civil liability to establish a civil conspiracy. Under federal pleading standards, this means a complaint must put defendants on notice of the underlying tort claim to plead civil conspiracy adequately.

Mr. Jean-Gilles alleges that Ms. Jean-Gilles and Chase participated in an illegal refinancing scheme. The only civil causes of action he bases on that scheme are the breach of fiduciary duty claims against Chase and Ms. Jean-Gilles. The Court has already determined that

13

it cannot examine the claims against Ms. Jean-Gilles, which it would need to do to adjudicate a claim of civil conspiracy based on those actions. It has also determined that the breach of fiduciary duty claim against Chase has been insufficiently pleaded.

Even if the Court were to take a broader view of the Complaint, Mr. Jean-Gilles has not given notice of an underlying cause of action that can survive Chase's challenge. Mr. Jean-Gilles repeatedly characterizes the refinancing itself, apart from any fiduciary duty owed, as "fraudulent" and "unlawful." (*E.g.*, Complaint ¶¶ 2, 59). But Mr. Jean-Gilles has not adequately stated a claim for fraud; and even if the refinancing was illegal, the Complaint does not give sufficient notice as to the basis for any potential civil liability. The lack of an adequately pleaded act that could itself give rise to civil liability means that Mr. Jean-Gilles has not adequately pleaded civil conspiracy under New York or Missouri law.

Mr. Jean-Gilles' contention that he has successfully pleaded federal civil conspiracy cannot save his claim. Federal common law does not apply in this diversity action. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). And while some federal statutes create civil conspiracy causes of action, Mr. Jean-Gilles has provided no indication as to which statute is the basis of his claim. Mr. Jean-Gilles has therefore failed to put defendants on notice as to the basis of any federal civil conspiracy claim he wishes to bring.

For all of these reasons, the Complaint does not state a facially plausible civil conspiracy against Chase. That claim must be dismissed.

*B. Nationwide*

The only claim Mr. Jean-Gilles brings against Nationwide is for aiding and abetting a civil conspiracy. Nationwide contends this claim must be dismissed because the Complaint insufficiently pleads "(1) a 'meeting of the minds' or 'common agreement' between the alleged

14

conspirators; and (2) that Nationwide 'knowingly' or 'intentionally' performed some act to carry out the unlawful conspiracy." (Nationwide Motion, ECF No. 75, ¶ 2). Mr. Jean-Gilles responds that Nationwide's argument "shows that [it] totally misconstrued the theory of liability that [Mr. Jean-Gilles] is asserting against [Nationwide]: the civil conspiracy that [Mr. Jean-Gilles] is alleging is against Fabiola Jean-Gilles and JP Morgan Chase; the liability that [Mr. Jean-Gilles] is alleging against Nationwide is for aiding and abetting the conspiracy . . . ." (Mr. J-G Response to Nationwide, ECF No. 77, ¶ 23).

Mr. Jean-Gilles correctly characterizes his claim against Nationwide, so Nationwide's arguments are not entirely apposite. Neither Missouri nor New York courts, however, have recognized an aiding and abetting cause of action. Mr. Jean-Gilles contends in his response to Nationwide that "aiding and abetting . . . mainly requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer." (Mr. J-G Response to Nationwide ¶ 9). This partially tracks the language of the Restatement (Second) of Torts § 876(b) (1979), under which a defendant can be held liable for another defendant's actions if it "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . ." *Id.*

Even if Missouri or New York were to adopt the Restatement standard, Mr. Jean-Gilles' claim would fail. The Restatement standard plainly requires that there be a breach of duty by the defendant receiving substantial assistance. For the reasons discussed above, Mr. Jean-Gilles has not adequately pleaded a breach of duty that the Court can adjudicate. The aiding and abetting claim fails for that reason alone.

Moreover, even assuming there had been a breach of duty, Mr. Jean-Gilles has also failed to demonstrate that Nationwide had knowledge of it. Nationwide correctly points out that "[Mr.

15

Jean-Gilles'] third amended petition alleges that Nationwide committed one, isolated act in this process – performing a title search . . . . ." (Nationwide Support Memo, ECF No. 76, at 2). Nationwide then observes, again correctly, that "while making the conclusory allegation that this title search was 'an essential part of the conspiracy' in one part of his complaint, [Mr. Jean-Gilles] alleges elsewhere that Nationwide's title search was both properly done and entirely ignored by the co-defendants . . . ." (Nationwide Support Memo at 3). It bases this observation on Mr. Jean-Gilles' allegation that "Defendant Chase was apparently apprised by co-conspirator Nationwide that [Mr. Jean-Gilles'] name was on the title but Chase's underwriters chose to proceed anyway . . . ." (Nationwide Support Memo at 3 (quoting Complaint ¶ 90)).

In other words, Mr. Jean-Gilles has alleged only that Nationwide conducted a title search and that Chase may or may not have found the title search to be helpful. Any assertion based on these allegations that Nationwide had knowledge of an illegal refinancing scheme or resulting breach of duty is wholly speculative and therefore cannot establish a facially plausible claim for aiding and abetting a civil conspiracy. The claim against Nationwide must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Fabiola Jean-Gilles' Motion to Dismiss Plaintiff's "Revised" Third Amended Complaint, (ECF No. 67), is **GRANTED**, and Plaintiff Carlos Jean-Gilles' claims against her are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant 177 Thompson Owners Corp.'s Motion to Dismiss, (ECF No. 60), is **GRANTED** and Mr. Jean-Gilles' claims against it are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendant JP Morgan Chase Bank, N.A.'s Motion to Dismiss Plaintiff's Third Amended Complaint, (ECF No. 73), is **GRANTED** and Mr. Jean-Gilles' claims against it are **DISMISSED WITH PREJUDICE.**

**IT IS FINALLY ORDERED** that Defendant Nationwide Title Clearing's Motion to Dismiss Plaintiff's Third Amended Complaint, (ECF No. 75), is **GRANTED**, and Mr. Jean-Gilles' claims against it are **DISMISSED WITH PREJUDICE.**

A separate judgment will accompany this Memorandum and Order.

Dated this 1st day of December, 2014

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE